1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10   ALBERT YOUNG,

11              Plaintiff,                    No. 2:03-cv-0951 FCD JFM (PC)

12        vs.

13   PETE BRESLER, et al.,

14              Defendants.              ORDER

15   _____/

16        Plaintiff, a state prisoner proceeding pro se, has filed this civil rights action

17   seeking relief under 42 U.S.C. § 1983.  The matter was referred to a United States Magistrate

18   Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local General Order No. 262.

19        On September 15, 2009, plaintiff filed a motion to stay this action.  Plaintiff seeks

20   a stay of this action to allow him and his family time to "try to hire an expert witness."  (Id. at 5.)

21   However, currently on file are two expert witness reports that do not support plaintiff's

22   remaining claims.

23        Plaintiff's former counsel obtained the expert opinion of Kevin D. Stuart, M.D.

24   (Pl.'s January 8, 2009 Request, Ex. 12 (Docket No. 137).)  Dr. Stuart opined that after review of

25   plaintiff's medical records, his concern regarding plaintiff's medical care revolved "primarily

26   about why [plaintiff] was not tested for HCV earlier in his incarceration," id. at 36, based on the

1    fact that the "prison population has the highest rate of HCV positivity of any group in the

2    country." (Id.)  However, Dr. Stuart concluded:

3           the delay in his diagnosis did not materially affect the outcome of
            his disease.  I state this because Mr. Young had every unfavorable
4           factor for not responding to treatment that an individual can have.
            They are:  genotype 1, high viral load, African-American, and long
5           duration of disease (first use of IVDA at the age of 23), advanced
            fibrosis (scarring), and probably obesity (though this is presumed
6           because his weight is not recorded.

7           The fact that he did not respond to the best treatment available
            further supports that an earlier diagnosis and treatment would not
8           have been effective as the treatments available prior to 2001 were
            marginally effective for patients with Mr. Young's profile.  In fact,
9           the most recent studies using current treatment involving African-
            Americans show a response rate of only 19% compared with 52%
10          in non African-Americans.  One could potentially argue that if he
            had been diagnosed earlier, he would have had less fibrosis, and
11          therefore more likely to respond to treatment.  However, as stated,
            the only medication he had any reasonable chance of responding to
12          was not FDA approved until 2001.  The period between FDA
            approval and Mr. Young receiving it was not such that the severity
13          of his liver disease would have progressed significantly.

14          In conclusion, while the physicians involved in Mr. Young's care
            had ample opportunity to [diagnose] his HCV, they had no
15          adequate treatment to offer.  At the time good treatment was
            available, Mr. Young was appropriately treated.  Unfortunately, his
16          lack of response to treatment was predictable, as he had every
            feature one can have to be a non-responder.

17

18   (Id. at 12-13.)

19          On October 5, 2007, defendants filed the expert report of Ronald L. Koretz, M.D.[1]

20   who opined that the medical treatment provided by Dr. Brown and Dr. McArthur was within the

21   standard of care for treatment of hepatitis C and that their conduct and any putative delay in

22   treatment did not cause plaintiff's failure to respond to pegylated interferon/ribavirin

23   combination therapy.  (Id. at 7-8 (Docket No. 98).)

24   /////

25   _____

26          [1]  Dr. Koretz is the Emeritus Professor of Clinical Medicine at the UCLA School of
     Medicine.

In order to prevail on his Eighth Amendment claim, plaintiff must prove that he had a "serious medical need" and that defendants acted with "deliberate indifference" to that need. <u>Estelle v. Gamble</u>, 429 U.S. 97, 105 (1976). A medical need is serious if "the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain'." <u>McGuckin v. Smith</u>, 974 F.2d 1050, 1059 (9th Cir.1992) (quoting <u>Estelle</u>, 429 U.S. at 104, 97 S.Ct. 285). Deliberate indifference is proved by evidence that a prison official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." <u>Farmer v. Brennan</u>, 511 U.S. 825, 837 (1994). Mere negligence is insufficient for Eighth Amendment liability. <u>Frost v. Agnos</u>, 152 F.3d 1124, 1128 (9th Cir. 1998). "Prison officials are deliberately indifferent to a prisoner's serious medical needs when they deny, delay, or intentionally interfere with medical treatment." <u>Hallett v. Morgan</u>, 296 F.3d 732, 744 (9th Cir. 2002) (internal citations and quotation marks omitted). Mere differences of opinion between a prisoner and prison medical staff as to appropriate medical care also do not give rise to a § 1983 claim. <u>Franklin v. Oregon</u>, 662 F.2d 1337, 1344 (9th Cir. 1981).

Retaining an expert witness in a complex HCV case is not an easy undertaking, as evidenced by the difficulty plaintiff's prior counsel had in obtaining one. Defendants did not produce an expert report until 2007, over four years after the filing of this action. Indeed, experts are expensive. Dr. Koretz' bill was estimated to be $10,000.00, and Dr. Stuart required $5,000.00 to produce a report based on review of medical records alone. Plaintiff has offered no evidence to demonstrate that he or his family have the financial ability to retain such an expert, even if they could find one. Plaintiff has provided nothing to demonstrate he has begun efforts to obtain one or even if he has identified such a prospect.

But even if plaintiff had provided such evidence, this court is not persuaded that allowing plaintiff to obtain a third expert opinion would benefit the court. The expert opinions

of Dr. Stuart and Dr. Koretz are now before the court and would be admitted to the jury for consideration.  Both experts opine that the medical records do not demonstrate that defendants were deliberately indifferent to plaintiff's serious medical needs.  Plaintiff has failed to demonstrate that the hiring of a third expert witness would have any affect on those conclusions, and would only serve to further delay a case that has been pending for over six years.  Plaintiff's motion for stay will be denied.

On May 27, 2009, the magistrate judge filed findings and recommendations herein which were served on all parties and which contained notice to all parties that any objections to the findings and recommendations were to be filed within twenty days.  Plaintiff has filed objections to the findings and recommendations.

In accordance with the provisions of 28 U.S.C. § 636(b)(1)(C) and Local Rule 72-304, this court has conducted a de novo review of this case.  Having carefully reviewed the entire file, the court finds the findings and recommendations to be supported by the record and by proper analysis.

Accordingly, IT IS HEREBY ORDERED that:

1.  Plaintiff's September 15, 2009 motion for stay is denied;

2.  The findings and recommendations filed May 27, 2009, are adopted in full;

3.  Summary judgment is granted for defendants Dr. Brown and Dr. McArthur on plaintiff's Eighth Amendment claim and plaintiff's claim under Cal. Const. Art. 1, § 17; and

4.  This action is dismissed.

DATED: October 29, 2009.

FRANK C. DAMRELL, JR.
UNITED STATES DISTRICT JUDGE